JACOB GOODMAN & CO., INC., Plaintiff, *v.* NEW YORK TELEPHONE COMPANY et al., Defendants.

Supreme Court, Special Term, New York County, June 25, 1954.

*Halperin, Natanson, Shivitz & Scholer* for plaintiff.

*Ralph W. Brown* for New York Telephone Company, defendant.

*Adrian P. Burke, Corporation Counsel,* for City of New York, defendant.

CORCORAN, J. This is an action by a consumer of telephone service in the city of New York against the New York Telephone Company and the City of New York for a declaratory judgment, a permanent injunction, and an accounting. The plaintiff moves for an injunction *pendente lite* against the defendant Telephone Company and that defendant moves to dismiss the complaint for legal insufficiency. Both of these motions will be considered together.

The complaint states that the plaintiff " sues on behalf of itself and all other similarly situated consumers of telephone service in the City of New York supplied by the New York Telephone Company who may come in and contribute to the cost of the action." It charges that the defendant Telephone Company, while purporting to collect New York City sales taxes on telephone services, has charged consumers the sales tax percentage on telephone calls which are not subject to the tax.

The complaint alleges that although only telephone calls which originate and terminate in New York City are subject to the city sales tax on telephone service, the defendant Telephone Company has been charging consumers the sales tax percentage on telephone calls which terminate outside New York City as well as those which terminate within the city limits.

The demand for relief is: (a) that the court render a declaratory judgment that the city sales tax is not properly charged on telephone calls terminating outside the city; (b) that the defendant Telephone Company be enjoined permanently from charging and collecting the sales tax percentage on such calls; (c) that the defendant Telephone Company be enjoined from paying over to the defendant City of New York any sums collected as taxes on out-of-city telephone calls; (d) directing both defendants to account to the plaintiff and other similarly situated consumers for the moneys illegally collected on out-of-city calls.

It is conceded that the City of New York does not claim that its sales tax is applicable to any telephone calls which terminate outside the city of New York. The New York City sales tax law does, however, require the Telephone Company to collect the tax on all local calls.

Prior to May 14, 1950, the Telephone Company encountered no difficulty in distinguishing between local calls which were subject to the tax and toll calls which were not subject to it. The dial telephone system in New York City was limited to the making of telephone calls which originated and terminated within the city limits. All telephone calls which originated in the city but terminated at points outside the city were toll calls

and were handled manually by telephone operators. These operators made out a ticket at the time of a toll call, which ticket contained information as to the place called and the duration of the call. Thus the Telephone Company had a separate listing of local calls and toll calls and was able to limit the billing and collection of taxes to the local calls.

On May 14, 1950, as a result of the decision of the New York Public Service Commission (Rate Case No. 14131) the metropolitan exchange area in which telephone calls could be dialed was enlarged to comprise not only New York City but Nassau County and southern Westchester County. All telephone calls within this area can be dialed and the intervention of a telephone operator is eliminated. Under this arrangement message rate subscribers, who comprise the great bulk of New York City subscribers, are charged from one to six message units for each call within the area, with additional message units applicable to conversations which extend beyond a certain time limit. These message units are counted mechanically by an automatic register, but no record can be made as to the terminal point of any call made over the dial within the area. Since the company can no longer distinguish between local and toll calls within the area, it has collected the sales tax from city subscribers on the total amount billed for service within the metropolitan exchange area. As a result, these subscribers have been paying a percentage of their telephone bills as city sales tax on telephone calls which are not subject to the tax.

When the metropolitan exchange area was enlarged, the Telephone Company sent written notice to all city subscribers and thereafter to each new subscriber in the city that the message units on suburban calls which were not taxable could not be separated from those on local calls and that the city sales tax on their bills was applied against the total charge for all message units billed, but that the subscriber could obtain refund of the moneys collected as sales tax on suburban calls by applying to the company. The Telephone Company has available for subscribers two forms of certificate. One is used on a monthly basis, in which the subscriber certifies to the actual number of message units used on suburban calls. The other certificate is for use on an annual basis and in it the customer certifies the percentage of suburban calls. This percentage is used to credit the subscriber on the monthly bills for a period up to a year unless the company is notified of some change in the percentage.

The Telephone Company has granted refunds and credits to those subscribers who have applied for them. The plaintiff has

not made any request or demand for a refund or credit, and the plaintiff did not make any written protest at the time it paid the sales tax, as it claims, on suburban calls.

The company has made a special survey of the number of suburban calls made within the metropolitan exchange area and it approximates the number of those calls to be 6.7% of the total calls made within the area. The company has retained that percentage of the sales tax moneys collected and carried such amounts on its books as a general account payable, remitting to the city all other taxes collected on its charges to city subscribers. The company has reported to the city the amounts thus retained, and the city has included them in deficiency assessments covering the period May 14, 1950 to December 31, 1952, which is the latest period audited.

The monthly bills rendered to city subscribers by the Telephone Company contain a statement as to the applicable percentage of Federal tax and city sales tax. The subscriber's attention is called to the back of the bill for the determination of the amount. The back of the bill also discloses that the city tax is based on charges for all telephone calls. This billing practice of the Telephone Company with respect to tax information has been approved both by the New York Public Service Commission and the City of New York.

On these facts, and entirely apart from the question whether the complaint states a cause of action, the plaintiff is not entitled to a temporary injunction and its motion for such relief is denied.

The plaintiff has made no demand for a refund of the moneys which it claims were illegally collected from it by the Telephone Company, and it has advanced no valid reason why it has failed to make such demand. The complaint alleges that the plaintiff has paid some $25 in excess charges since May, 1950. The Telephone Company states that it is willing to refund these excess charges to the plaintiff if it applies for the same, but the plaintiff refuses to accept this offer.

No claim is made in the moving papers that the defendant company is financially irresponsible, and it is difficult to see how the plaintiff will be irreparably damaged if a temporary injunction is not granted. If the plaintiff is entitled to ultimate relief, the Telephone Company is well able to respond in money damages.

It is quite apparent, on the other hand, that irreparable harm might be done to the Telephone Company if it is enjoined even temporarily. The plaintiff does not deny the Telephone Com-

pany's claim that it is impossible under the dial system to distinguish between local and suburban calls within the metropolitan exchange area. A temporary injunction would have the effect of restraining the Telephone Company from collecting the city sales tax on all dial calls. Several million dollars would then be lost either by the City of New York or by the Telephone Company while the injunction was in effect.

Finally, the plaintiff has not suggested the alternative which the Telephone Company could use to avoid the situation that has here arisen. It is true that there is great inconvenience to the subscriber in requiring him to keep a record of suburban calls made within the metropolitan exchange area, but the fact remains that he is the only one who knows whether a dial call within the area was local or suburban. The only thing the Telephone Company could do to keep a record of local and suburban calls is to go back to the old system of making calls outside the city limits to Nassau County and southern Westchester County by means of telephone operators. This would, in effect, overrule the decision of the Public Service Commission, which approved the enlargement of the metropolitan exchange area. It is estimated that the savings to consumers as the result of the enlargement of the area in which dial telephone calls can be made is something over $4,000,000 a year. If the Telephone Company were to change back to the old system, the consumers would lose these savings.

It was specifically brought to the attention of the Public Service Commission that the extension of the dial system and the necessary use of automatic message unit registers would make it impossible to distinguish between calls terminating within the city and those outside of the city. (Minutes of hearings before P. S. C., Case No. 14131, pp. 3929-3930.)

It is quite clear that there has been mechanical and technical progress in improvement of telephone service to the economical and operational advantage of the consumer. The metropolitan exchange area plan was approved and placed in operation openly and honestly, with the knowledge and approval of the appropriate government agencies. The plaintiff is not entitled to an injunction *pendente lite.*

On the defendants' motion to dismiss the complaint for legal insufficiency, we cannot, of course, consider many of the facts which have been recited on the plaintiff's motion for a temporary injunction, for we are limited to the allegations in the complaint. An analysis of those allegations and the demand

for relief, however, reveal that the complaint is fatally defective and must be dismissed for legal insufficiency.

While the complaint purports to state a representative cause of action, it does not do so. In the first place, it states that it is brought only on behalf of such consumers as intervene in the action " and contribute to the cost of this action ". There are no allegations in the complaint which define the class of consumers represented. The general statement " similarly situated " is not sufficient in this case, because it does not appear from the complaint that all consumers have the same type of contract with the Telephone Company. It does not appear, moreover, whether other consumers will benefit from the relief sought. It may be that some consumers prefer to sue for money had and received or to file claims with the Telephone Company for refunds or with the City of New York for tax refunds.

It is true that a class action on behalf of other consumers may be brought under certain circumstances (see *Kovarsky* v. *Brooklyn Union Gas Co.*, 279 N. Y. 304), but the class must be clearly defined and the relief sought must be specific. If the Telephone Company, for example, was attempting under a threat of discontinuance of service to levy a charge for a particular service to all subscribers in the class of consumers on whose behalf the action was brought, and that charge was prohibited by the Public Service Law, a case might be presented where the court would enjoin the imposition of the illegal charge or the discontinuance of the service (cf. *Kovarsky* v. *Brooklyn Union Gas Co., supra*). That is not the instant case. Here the class on whose behalf the action is brought is not defined and the relief sought is neither specific nor proper.

The complaint seeks a declaratory judgment, but there is no justiciable issue in the case. The plaintiff asks that the court declare that the city sales tax is not properly charged on out-of-city calls. Both defendants concede that. No declaration by a court is necessary.

The complaint also seeks an accounting, but nothing is alleged to justify such procedure. The Telephone Company is neither a trustee nor an agent of the consumer and no confidential relationship exists. The complaint alleges the existence of a fund which has been set aside by the Telephone Company, but it does not allege a refusal on the part of the Telephone Company to make refunds to consumers out of this fund. There is an allegation that the consumers would be denied an adequate remedy at law if they were required to make refund applica-

tions, but this is merely the statement of a conclusion of law, and no ultimate facts are alleged to justify such conclusion.

Finally, the complaint fails to allege a demand by the plaintiff for the money claimed to be due and a refusal by the defendant Telephone Company to pay such money. There appears to be an adequate remedy at law for money had and received in the event the Telephone Company refuses to make the refund.

It may appear that the plaintiff is left in the position of having to tabulate all dial telephone calls made. This may be the unfortunate result, but it appears to me that the facts of this case present an ideal situation for consideration not by the courts, but by the Public Service Commission, which was created, among other reasons, to handle administrative problems of this kind.

An order dismissing the complaint shall be settled by July 1, 1954.